CONNER, J.,
concurring specially.
I concur in the result, but I am unable to agree with receding from the position this court has previously taken on the test for harmless error in civil cases.
I agree that our supreme court has opined harmless error should be based on the effect of the error on the trier of fact. I concede in State v. DiGuilio, 491 So.2d 1129 (Fla.1986), the supreme court established that in criminal cases, the burden of persuasion to obtain the verdict (beyond a reasonable doubt) is the same burden of persuasion in applying a harmless error analysis. I also concede there is an easy logic to the idea that in all cases the burden of persuasion to obtain a judgment should be the same burden of persuasion to reverse a judgment. That necessarily means there are three different tests or standards in determining if an error is harmless.[27]
Judge Damoorgian hits the nail on the head when he points out one of the concerns about the notion of harmless error is the fear that its application will rely on the subjective viewpoint of a panel of appellate judges. I also agree with Judge Damoor-gian that appellate judges are periodically called upon to apply the notion of a “miscarriage of justice” in deciding whether to grant or deny certiorari review. However, petitions for certiorari review are not as “routine” (numerically) as direct appeals. I also doubt there is much consensus among appellate judges on how to define or describe a “miscarriage of justice.”
*776 My real struggle with the majority opinion is this: identifying the perspective from which harmless error is to be assessed and the burden of persuasion for establishing whether error is harmless does not tell me much about what the actual standard is. The clearest statement in the majority opinion of the harmless error standard for civil cases is: “To avoid a new trial, the beneficiary of the error in the trial court must show on appeal that it is more likely than not that the error did not influence the trier of fact and thereby contribute to the verdict.” (Emphasis added.) That articulation suggests to me that the thought process for the appellate panel is to weigh and consider the amount of influence the error may have had on the trier of fact and to assess whether some tipping point was reached in which one can safely conclude “more likely than not” the error “contributed to the verdict.” For me, this standard invites too much speculation and subjective analysis. Lawyers will have great difficulty advising clients about the likely outcome of an appeal where such standards are used.
As the majority points out, we are more tolerant of error when the outcome is whether someone should be paid money than when the outcome is whether someone should be deprived of liberty. That is as it should be. Thus, it seems reasonable to assume that in passing a harmless error statute the legislature appreciated the difference in the outcome between a civil case and a criminal case. If I am correct, there is no reason the judiciary needs to measure harmless error the same way for both types of cases. It is appropriate to protect the fairness of the fact-finding process above protecting the finality of a decision in criminal cases. I submit in civil cases it is more appropriate to protect the finality of a decision above protecting the fairness of the fact-finding process.
Focusing on the effect of the error on the trier of fact, raises another concern in civil cases. Does the application of the standard differ if the trier of fact is a judge instead of a jury? This concern is enhanced because more civil cases are tried nonjury than criminal cases. Focusing on the effect of the error on the trier of fact is really an exercise in divining whether the error may have influenced the trier of fact; and if so, was there enough influence to affect the trier of fact’s decision. It would seem to me that my divining skills will be applied differently when the trier of fact is a jury as opposed to a judge.[28]
Another problem I have with the majority’s contention that in this district we have set the bar of harmful error too high for civil cases is that setting the bar too low is an affront to the integrity of the jury process and the decision rendered by six impartial persons selected by both sides to try the case. In civil cases, the appellant is unhappy with a jury decision and seeks a new decision by a new jury. If the rules regarding reversal required that the case be retried with the same evidence and the same arguments, minus the error, it is doubtful we would have as many appeals in civil cases as we do.
Instead, the appellant is seeking a second bite at the apple with a new jury, with the understanding that, having the benefit of a dry-run, the case will be presented in a different fashion. More often than not, the restructuring of evidence and arguments will have little connection to the error that caused the retrial. A “but for” *777 analysis which focuses on whether the outcome would be the same with the original jury, without the error, gives honor to the original jury.
The majority quotes the supreme court in DiGuilio:
The test is not a sufflciency-of-the-evi-dence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict. [Id. at 1139.]
and a little later goes on to opine:
Under the DiGuilio test, a judgment should be reversed, and a new trial granted, whether or not the outcome of that trial is likely to be different, whenever the appellate court believes there is a reasonable possibility that the error influenced the trier-of-fact and contributed to the verdict.
The differences between a “correct result” [“but for”] test and an “effect on the fact finder” test are subtle but important. An “effect on the fact finder” test asks the appellate judge to look closely at the error and estimate its effect on the trier-of-fact. A “correct result” test asks the judge to look at everything but the error and guess whether the verdict in a trial without it would have been different. In short, one test focuses on process; the other on the end result. Moreover, a “correct result,” or “but-for,” test asks the judge to exclude the wrongly admitted evidence (or include the wrongly rejected evidence) and weigh the evidence anew — precisely what DiGuilio forbids. See DiGuilio, 491 So.2d at 1136.
I submit the majority has read more into DiGuilio than what our supreme court said. Although the majority equates a “correct result” test with a “but for” test, I am not so sure our supreme court would do the same. What the supreme court made clear in DiGuilio is that the analysis of whether the error affected the verdict is to be conducted from the perspective of the jury (would the jury have reached the same decision without the error), and not from the perspective of the appellate panel (would the appellate panel have reached the same decision the jury reached if the error is excluded). I agree our supreme court has rejected a “correct result” test in DiGuilio; I do not agree it rejected a “but for” test.
A “but for” analysis is consistent with DiGuilio. In DiGuilio, the supreme court said: “If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.” That is simply another way of saying the error is harmful if the appellate court cannot say beyond a reasonable doubt, “but for” the error, the verdict would not have been the same. Determining whether error “affected the verdict” is no different from determining whether the winning party would have gotten its verdict without the error.
A “but for” analysis of harmless error in civil cases makes the exercise of divining the influence of error on the trier of fact easier, regardless of the burden of persuasion and regardless of whether the trier of fact is a jury or a judge. It also comports more with the history of why the statute was enacted: to curb the application of an overly liberal standard for granting new trials. Also, a “but for” analysis makes it easier for lawyers to predict outcomes and advise clients. I contend that a “but for” *778 analysis of harmless error is less prone to be criticized as too speculative and subjective.
If we are going to allow different standards for the application of harmless error depending on whether the case is criminal or civil, I am more comfortable with the more stringent “but for” test this district has adopted in civil cases because we are more tolerant of error in civil cases and because the stakes are different than criminal cases.[29] If this court is going to reformulate the harmless error test or standard to be applied to civil cases, I submit it should be this: “To avoid a new trial, the beneficiary of the error in the trial court must show on appeal that it is more likely than not that the decision of the trier of fact would have been the same without any influence of the error.”[30]
Undoubtedly, the majority will contend my articulation is too “result oriented,” whereas the majority’s articulation is more “process oriented.”[31] The distinction between the two formulations can be described this way: I submit the majority’s articulation will lead to more reversals because assessing “influence on the trier of fact” is expressed as establishing a negative (“error did not influence”) whereas my articulation focuses on establishing a positive (the result would have been the same). Establishing a negative is always more difficult than establishing a positive. Protecting the fairness of the fact-finding process should prevail over protecting finality of a decision in criminal cases, and the appellee should have to establish a negative to avoid reversal. However, in civil cases, protecting finality of a decision should prevail over protecting the fairness of the fact-finding process, and the appel-lee should have to establish a positive.
LEVINE, J., concurs.

. In criminal cases, the burden of persuasion is "beyond a reasonable doubt.” In civil cases, there are two possible burdens of persuasion, depending on the type of case: "preponderance” (the majority speaks of "more likely than not”) and "clear and convincing.”

. Because judges are trained in the law they are less likely to be affected by error as fact-finders. Also, my assumption is that trial judges are less likely to be swayed by emotion and subjective factors.

. I agree that with a more stringent standard, there is the potential that lawyers will engage in "win at all cost” tactics because the likelihood of reversal is less. However, that type of improper lawyer conduct is better addressed by sanctions against the lawyer than by reconvening a new jury to tty the case.

. For civil cases in which the burden of persuasion is "clear and convincing” (such as Jimmy Ryce cases), my articulation would change the words "more likely than not” to "clear and convincing.”

.Both DiGuilio and the majority express the harmless error analysis in terms of whether the error "contributed to the verdict.” How does one determine that without being "result oriented?”